UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK FOSTER                                                CIVIL ACTION

VERSUS                                                     NO. 13-00065

GLOBALSANTAFE OFFSHORE                                     SECTION "C"(5)
SERVICE & TRANSOCEAN OFFSHORE
DEEPWATER DRILLING INC.


**ORDER AND REASONS**[1]

Before the Court is a Motion to Dismiss, or in the alternative Motion for Summary Judgment, or in the further alternative Motion to Dismiss or Transfer for Lack of Appropriate Venue, filed by Defendants GlobalSantaFe Offshore Services Inc. ("GSFOSI") and Transocean Offshore Deepwater Drilling Inc. ("TODDI"). Rec. Doc. 9. Plaintiff Mark Foster ("Foster") opposes this motion, and Defendants filed a reply. Rec. Doc. 11; Rec. Doc. 15. Having examined the memoranda of counsel, the record, and the applicable law, the Defendants' motion is DENIED for the following reasons.

**I. FACTUAL BACKGROUND**

The instant dispute arises from an accident that occurred while plaintiff Foster was working aboard the Discoverer Luanda, a rig located off the coast of Angola, Africa, on November 1, 2012. Rec. Doc. 1, p. 2-3; Rec. Doc. 9-2, p. 1. Foster incurred injuries to his lower back, knee, and other parts of his body. Rec. Doc. 1, p. 3. He brings this case against TODDI and GSFOSI for negligence, unseaworthiness, and maintenance and cure, pursuant to the Jones Act and general maritime law. Rec. Doc. 1, p. 2-5. The Defendants allege that at the time of the accident, the rig was owned by Angola Deepwater Drilling Company (Rig) Ltd., which is a Transocean Enterprise Inc. company, and was bareboat chartered to Angola Deepwater Drilling Company (Operations) Ltd. Rec. Doc. 9-

---

[1] Kayla Lawrence, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

3, p. 2; Rec. Doc. 9-11, Exh. E, p. 2. Foster maintains that he has never heard of Angola Deepwater Drilling Company (Operations) Ltd., and in his complaint, Foster asserts that GSFOSI and/or TODDI owned, operated and/or controlled the rig at the time of the accident. Rec. Doc. 11-15, p. 1; Rec. Doc. 1, p. 2.

Foster received his paychecks from GSFOSI, a Cayman Islands corporation, and GSFOSI is listed as Foster's employer on his 2010 and 2011 W-2's. Rec. Doc. 9-3, p. 1; Rec. Doc. 11, p. 7-8; Rec. Doc. 11-8, 1-2. In all submitted exhibits that contain GSFOSI's address, the address is 4 Greenway Plaza, Houston, Texas, 77046. *See* Rec. Doc. 11-8, 1-2; Rec. Doc. 11-16. TODDI, which is incorporated in Delaware, performs administrative functions such as human resources, immigration, accounting, payroll, and travel arrangements for GSFOSI and other Transocean Enterprise Inc. companies. Rec. Doc. 9-3, p. 1; s*ee generally* Rec. Doc. 9-12, Exh. F. During the time in question, only TODDI's employees performed the administrative functions for GSFOSI, and TODDI's administrative office was located at the same Houston, Texas address as the address listed for GSFOSI. *Id.* at 3, 6. Additionally, TODDI was listed as Foster's employer on Foster's 2009 and 2010 W-2's. Rec. Doc. 11-7, p.1-2.

Defendants do not rely on any particular rule of civil procedure in making their motion, nor do they set forth any standard of review. The only clear statements of a motion are on pages three and five. Rec. Doc. 9-3, p. 3, 5. On page three, they state: "As shown by the evidence attached hereto, TODDI does not belong in this litigation, and should be dismissed because the pleadings do not and cannot set forth a cause of action against that entity. Alternatively, this Court should grant summary judgment dismissing that entity as an inappropriately named defendant, named only for fraudulent joinder purposes." *Id.* at 3. And on page five, they state: "[O]n the face of the pleadings

2

GSFOSI is an obviously improper party to this litigation, and should be dismissed in any event, but also on the basis that there is no evidence showing that it has any operational control over the rig or its employees." *Id.* at 5. The Court construes Defendants' motion to focus only on alleging a lack of personal jurisdiction, improper party, and venue. Rec. Doc. 9-3.

Defendants argue that the Court cannot exercise personal jurisdiction over GSFOSI because GSFOSI is only a paymaster and because contacts with the forum state are "sporadic at best." *Id.* at 4-9. A "paymaster" typically refers to either a government or military officer who pays salaries and takes out taxes, or to payroll managers of private companies. *See generally United States v. California*, 507 U.S. 746, 755, 113 S. Ct. 1784, 1789, 123 L. Ed. 2d 528 (1993); *McElroy v. U.S. ex rel. Guagliardo*, 361 U.S. 234, 275, 80 S. Ct. 311, 4 L. Ed. 2d 268 (1960); *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1557 (5th Cir. 1985). It can also refer to private companies that provide paycheck and tax services for other companies, but courts do not often use the term outside of the military context. The Defendants also argue that they are improper parties to this case because neither TODDI nor GSFOSI can be considered Foster's employer, and neither had sufficient control over the operations of the rig to be brought into this litigation. Rec. Doc. 9-3, p. 2-3. Defendants further contend that TODDI is included in this case only for the fraudulent purpose of establishing venue in this Court. *Id.* Without TODDI as a party in this suit, Defendants maintain, venue is improper and the case must be transferred to an appropriate venue. *Id.* at 9.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

*1. Standard of Review*

3

When a Defendant challenges personal jurisdiction, the plaintiff bears the burden to establish personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "When the district court rules on the motion to dismiss before holding an evidentiary hearing, the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 869 (5th Cir.2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)).

Because the Louisiana long-arm statute confers personal jurisdiction to the limits of due process, jurisdiction is warranted if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." LA. REV. STAT. § 13:3201(B); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotations omitted); see also *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (applying *Int'l Shoe*). Courts have personal jurisdiction over defendants in two different circumstances: "specific" or "general." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir.1999). Specific jurisdiction requires that the claim arise from or directly relate to the defendant's contact with the forum. *Id.* General jurisdiction exists "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317). The "continuous and systematic contacts test is a difficult one

4

to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent.*, S.A., 249 F.3d 413, 419 (5th Cir. 2001). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853-54.

### *2. Discussion*

The Defendants argue that the Court cannot exercise personal jurisdiction over GSFOSI because its contacts with Louisiana are "sporadic at best." Rec. Doc. 9-3, p. 4. Defendants do not directly contest specific jurisdiction. However, Foster argues that the exercise of specific jurisdiction is appropriate because enough of GSFOSI's actions occurred in Louisiana and relate to the claims asserted. Specifically, he contends that because the Defendants sponsored three required training sessions in Louisiana, and because his maintenance and cure claim was handled by Shuman Consulting in Lafayette, Louisiana, enough contacts relate to the claim asserted. Rec. Doc. 11, p. 8, 10, 16-17. He relies on *Coats v. Penrod Drilling Corp.*, in which the Fifth Circuit held that exercising specific jurisdiction was appropriate when a company recruited employees in the forum state, required the employee to sign a contract that mandated him to return to the forum state once a year during his employment, and, after the employee's injury, flew the employee to the forum and then paid his medical bills. 5 F.3d 877, 884 (5th Cir. 1993). In this case, there is no evidence that Foster was recruited in Louisiana, or that the Defendants recruit in Louisiana at all. It is clear, however, that mandatary training occurred in Louisiana and at least some contacts that are related to the claim occurred in Louisiana. Because this case is similar to *Coats*, it is likely that the Court has specific jurisdiction. Additionally, if the Court did not have specific jurisdiction it would have

general jurisdiction under Federal Rule of Civil Procedure 4(k)(2). *See Goodyear*, 131 S. Ct. 2846, 2855 (explaining the different burdens of proof for "case-specific" (specific) jurisdiction and "all-purpose" (general) jurisdiction).

Foster argued in its reply that general personal jurisdiction is established under Federal Rule of Civil Procedure 4(k)(2). Rec. Doc. 11, p. 18-20. Rule 4(k)(2) applies if (1) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (2) exercising jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2); *see also Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650-51 (5th Cir. 2004) (explaining the Rule 4(k)(2) standard). The rule's function is to "sanction[] personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker Carriers Corp. v. MV YA MAWLAYA*, 99 F.3d 717, 720 (5th Cir.1996) (emphasis omitted). The Court need not examine whether there is jurisdiction in each of the fifty states. *Adams*, 364 F.3d at 651 (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). As long "as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Id.* Once a court determines the defendant is not subject to jurisdiction in any other state, the court must then determine whether the defendant's contacts with the nation as a whole are sufficient. *Id.*

Here, GSFOSI has stated that it is not subject to personal jurisdiction in another state. Rec. Doc. 15-2, p. 5. Because GSFOSI takes the position it is not subject to general jurisdiction in any state, Rule 4(k)(2) would be invoked if the Court had not found that it had specific jurisdiction over

6

the defendants. Out of an abundance of caution, the Court shall also conduct an analysis under Rule 4(k)(2).

The Court therefore turns to GSFOSI's contacts with the nation as a whole. Judge Barbier recently held in *Johnson v. PPI Technology Services, L.P.* that, while it was a close call, GSFOSI's contacts with the United States were sufficient to confer jurisdiction under Rule 4(k)(2). Nos. 11–2773, 12–1523, 2013 WL 681927, at *9, 84 Fed. R. Serv. 3d 1401 (E.D. La. Feb. 22, 2013). Referring to the same McKenzie deposition submitted in this case, Judge Barbier reasoned that the contacts were sufficient. *Johnson,* 2013 WL 681927, at *9. Mr. McKenzie, a TODDI employee in charge of GSFOSI payroll, stated that GSFOSI's primary purpose was to manage the payroll for 300 United States citizens that work abroad. Rec. Doc. 9-12, Exh. F, p. 3-4. This includes issuing paychecks, W-2's, and direct deposits. *Id.* at 4.The headquarters for this activity was in the Houston office, and all of Mr. McKenzie's work had been done in Houston. *Id.* at 6.Further, Mr. McKenzie stated that "probably 40" individuals within the State of Louisiana received W-2 forms or other tax forms from GSFOSI for the year 2010. Rec. Doc. 9-12, Exh. F, p. 5. Given this information in addition to Judge Barbier's reasoning and decision, the Court holds that GSFOSI's contacts with the nation are sufficient for the purposes of Rule 4(k)(2).

Defendants however maintain that this jurisdictional issue has already been resolved by Chief Judge Vance in *Anderson v. GlobalSantaFe Offshore Services, Inc*. Nos. 11-812, 2013 WL 594201 (E.D. La. Feb. 15, 2013). This reliance is misplaced, however, because the *Anderson* court held that it did not have personal jurisdiction over GSFOSI because Rule 4(k)(2) requires proper service or waiver of service, and the plaintiff in that case failed to serve a summons or file a waiver.

*Id.* at *7. The Defendants here, however, concede that service has been accomplished. Rec. Doc. 9-3, p. 6. The *Anderson* decision is therefore distinguished from this case.

The Defendants next argue that Rule 4(k)(2) is inapplicable because it "requires that there be a claim that arises under Federal Law," and "it remains to be seen whether Federal law applies in this case at all." Rec. Doc. 9-3, p. 6 (internal quotations omitted). This argument is unfounded, as this case arises under the Jones Act and general maritime law. The Fifth Circuit has held that claims that fall under a federal courts' admiralty jurisdiction arise under federal law for the purposes of Rule 4(k)(2). *World Tanker Carriers*, 99 F.3d at 723.

The Defendants also argue that a Rule 4(k)(2) analysis should address "whether the exercise of personal jurisdiction would be appropriate in the chosen forum." Rec. Doc. 9-3, p. 7. In other words, the Defendants maintain that under Rule 4(k)(2), contacts must be sufficient in the United States as a whole *and in the forum state*. *Id*. This proposition is not only unprecedented, it is inconsistent with the purpose of Rule 4(k)(2), which is to enable courts to exercise jurisdiction over defendants that have sufficient contacts in the country, but not in a particular state. The Defendants' argument is therefore unmerited.[2]

## B. Rule 56 Motion for Summary Judgment and Motion to Transfer for Lack of Appropriate Venue Pursuant to 28 U.S.C.A. § 1404

### *1. Standard of Review*

Summary Judgment is warranted only when the record indicates that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[2]Foster alternatively asserts that the Court is entitled to consider TODDI's contacts in Louisiana when deciding whether personal jurisdiction exists as to GSFOSI because the single business theory applies in this case. Rec. Doc. 11, p. 16-17, 20-21. Because personal jurisdiction is conferred under Rule 4(k)(2), the Court declines to discuss Foster's alternative argument.

FED. R. CIV. P. 56(a). When "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," there is no genuine dispute for trial. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). Disputed facts must be material, and material facts are only those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Moreover, "an issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo City,* 246 F.3d 481, 489 (5th Cir. 2001). Further, when considering a motion for summary judgment, courts consider facts and evidence in the light most favorable to the non-moving party. *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009).

### *2. Arguments*

In the alternative to its Motion to Dismiss, the Defendants argue that the Court should grant summary judgment because neither Defendant is Foster's employer. Rec. Doc. 9-3, p. 3-4. The Defendants argue that GSFOSI is merely a "paymaster," and that TODDI had nothing to do with the operations of the Discoverer Luanda, Foster's employment, or the employment of any seaman working on the rig. *Id.* at 2-5. Defendants allege that TODDI is an inappropriately named defendant, named only for the fraudulent purpose of establishing venue in this Court. *Id.* The Defendants further contend that without TODDI as a defendant in this case, venue is improper and the case must be transferred to an appropriate venue. *Id.* at 9.

Foster replies that GSFOSI is not a mere paymaster and that TODDI is a properly named defendant because TODDI and GSFOSI are essentially operating as a single business enterprise. Rec. Doc. 11, p. 12, 14-16. Foster alternatively argues that TODDI acts as a borrowing employer of Foster "by virtue of the significant involvement that TODDI has in [Foster's] day-to-day

9

activities." *Id.* at 12. For reasons stated below, the Court concludes that Defendants' Motion for Summary Judgment is denied, and that venue is proper.

### *3. GSFOSI as Paymaster*

The Defendants ask the Court to grant summary judgment because GSFOSI is a mere paymaster and cannot be considered Foster's employer. Rec. Doc. 9-3, p. 4. An employment relationship is essential for recovery under Jones Act claims and maintenance and cure claims. *Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981) (citing *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790, 69 S. Ct. 1317, 1321, 93 L. Ed. 1692 (1949) and *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371-72, 53 S. Ct. 173, 174, 77 L. Ed. 368 (1932)). It is the seaman's burden to establish that an employment relationship existed, and the existence of such is determined by maritime law. *Wheatley*, 660 F.2d at 1026; *see also Burgeois v. Orgeron*, CIV.A. 96-2776, 1998 WL 195990, at *1 (E.D. La. Apr. 22, 1998).

When considering whether an entity is an employer under the Jones Act, "control is the critical inquiry." *Volyrakis v. M/V Isabelle*, 668 F.2d 863, 866 (5th Cir. 1982), *overruled on other grounds by In re Air Crash Disaster*, 821 F.2d 1147. The control must be "substantial." *Id.* In assessing an entity's control over an individual's employment, courts consider such factors as "payment, direction, and supervision of the employee [as well as] . . .the source of the power to hire and fire." *Id.*; *see also Johnson v. PPI Tech. Servs., L.P.*, CIV.A. 11-2773, 2012 WL 5423784, at *5 (E.D. La. Nov. 6, 2012). Other courts take into account the amount of supervision, the amount of investment in the operation, the degree of control over the details of the operation, and the parties' understanding of the relationship. *Johnson*, 2012 WL 5423784, at *5 (citing *Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir.1981)).

Here, the Defendants argue that the only thing that GSFOSI does is send paychecks and tax forms, and that GSFOSI is essentially a paymaster. The Defendants do not cite any precedent in support of their paymaster argument. They point to the sworn affidavit of Mr. McKenzie, TODDI Global Payroll Manager, which states that GSFOSI "is an entity that provides paymaster services to different overseas Transocean operations." Rec. Doc. 9-13, Exh. G, p. 2. Defendants also point to the sworn Affidavit of William H. Gammerdinger, the Vice President of GSFOSI, in which Gammerdinger states that GSFOSI "was not involved in any way with the operations of the Discoverer Luanda" on the date of the alleged accident. Rec. Doc. 9-10, Exh. D, p. 1. He goes on to say "[n]or did that entity employ or in any way supervise any work performed by the plaintiff, Mark Foster," and that GSFOSI "does not hire, fire or recruit … [or] handle human resources." *Id.* at 1-2.

Foster argues that he should not have to "seek out his employer," and that looking to his W-2 is sufficient. Rec. Doc. 11, p. 13-14. Foster points to his 2010 and 2011 W-2's. In the box labeled "Employer's name, address, and ZIP code," GSFOSI is listed. Doc. 11-8, p. 1-2. He also supplied to the Court various employment and human resources documents that have the Transocean logo on them, but do not list any particular Transocean company. In Foster's own sworn Affidavit, he writes, "I have always believed that my employer was [GSFOSI] during the time I was working overseas," and that he "would have never worked for a 'non-American' company off the coast of Africa." Rec. Doc. 11-15, p. 1.

The Court finds Foster's argument persuasive, at least for the purposes of summary judgment. Even if GSFOSI is a "paymaster," as the Defendants' contend, both payment and the parties' understanding of the relationship are key factors for determining employment status. Here,

GSFOSI paid Foster, and Foster believed he was employed by GSFOSI. This is a reasonable assumption. Foster was working on a rig near Africa, had no notice of any contracts transferring ownership or establishing chartering agreements between companies, continually received paychecks from GSFOSI, and was advised to contact the Houston office where GSFOSI was located regarding Foster's potential questions about income tax. *See* Rec. Doc 11-14; Rec. Doc. 11-15; Rec. Doc. 11-16. Moreover, the Fifth Circuit has held that an immediate employer for purposes of the Jones Act and maintenance and cure is the company that issues paychecks to an employee, withholds taxes, and profits from an employee's labor. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224-25 (5th Cir. 1975), *decision clarified,* 546 F.2d 675 (5th Cir. 1977), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc*., 107 F.3d 331 (5th Cir. 1997). The court reasoned that: "In any common sense meaning of the term, Labor Services was Spinks' employer. . . Now that he is injured, Labor Services cannot forget him. We do not quarrel with the trial court's finding that Chevron had sufficient control over him to be a borrowing employer. We merely hold that under the Jones Act, Labor Services remained his employer." *Id.* Following the Fifth Circuit, the Court holds that for the purposes of summary judgement, there is at least a dispute as to whether GSFOSI was Foster's employer. Summary judgement in GSFOSI's favor is therefore denied.

### *4. Plaintiff's Single Business Enterprise Theory*

The Court next addresses Foster's contention that TODDI and GSFOSI operate as a common enterprise. Rec. Doc. 11, p. 12; Rec. Doc. 1, p. 2. The Court must decide whether there is a genuine issue of material fact regarding the distinctness of the entities. If the two entities operate as a single business enterprise, then so long as Foster has a sufficient Jones Act employment status with one of the entities, both entities would be properly named as defendants in this suit. *Baker v. Raymond*

12

*Int'l, Inc.*, 656 F.2d 173, 179-81 (5th Cir. 1981); *see also Radio & Television Broad. Union v. Broad. Serv.,* 380 U.S. 255, 256, 85 S. Ct. 876, 13 L. Ed. 2d 789 (1965) (considering "several nominally separate business entities to be a single employer where they comprise an integrated enterprise"). If, however, the entities are discrete and GSFOSI is not an alter ego of TODDI's, Foster's employment status with TODDI must then be independently evaluated. *Baker*, 656 F.2d at 179-81. Such an evaluation could lead to the finding that Foster is not employed by TODDI, and claims against TODDI must then be dismissed. Venue would then be compromised and the case must be dismissed.

Typically the single business enterprise theory is evaluated under state law. *See In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335-36 (5th Cir. 2007); *In re Schimmelpenninck*, 183 F.3d 347, 356 (5th Cir. 1999); *Acceptance Indem. Ins. Co. v. Maltez,* 617 F. Supp. 2d 467, 473-75 (S.D. Tex. 2007). However, the Fifth Circuit has recognized the theory under a Jones Act claim. *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 180 (5th Cir. 1981). In *Baker*, the court evaluated whether a jury charge that applied nine factors for a single business enterprise determination was appropriate. Under this charge, the jury in *Baker* found that the entities were sufficiently intertwined to hold that the parent corporation was the plaintiff's employer under the Jones Act. *Id.* There, because the question was whether a parent corporation was vicariously liable under the Jones Act for the debts of its subsidiary, the Fifth Circuit found that the charge was inadequate because the nine factors alone were insufficient. *Id.* at 180-81. The court explained that in addition to the nine factors, a jury should consider the fact that "exceptional circumstances" must exist to extend liability to a dominant corporation. *Id*. at 180; *see also United States v. Clinical Leasing Serv., Inc.*, 982 F.2d 900, 903 (5th Cir. 1992). Exceptional circumstances exist if the dominant entity's degree of control

over the subservient entity amounts to "total domination . . . to the extent that the subservient corporation manifests no separate corporate interests of its own." *Baker*, 656 F.2d at 181. The nine factors are:

> (1) Common stock ownership
>
> (2) Common directors or officers
>
> (3) Whether the primary entity finances the subordinate entity
>
> (4) Whether the primary entity caused the incorporation of subordinate entity
>
> (5) Whether the primary entity operates with grossly inadequate capital
>
> (6) Whether the primary entity pays the salaries and other expenses or losses of subordinate entity
>
> (7) Whether subordinate entity receives any business except that given to it by the primary entity
>
> (8) Whether the primary entity uses the subordinate entity's property as its own
>
> (9) Whether the directors and officers of subordinate entity act independently in the interest of that company, or whether they take their orders from the primary entity and act in the primary entity's interest.

*Id.* at 180. This list is not exhaustive, and the burden lies on the plaintiff "to justify the extraordinary step of holding the dominant party liable." *Id.* at 181. Further, while no single factor is dispositive, the ownership of stock is a significant factor because of the dominant stockholder's potential right to exercise complete control over the subordinate entity. *Id.*

Considering the depth of this inquiry, the Court must have considerable evidence of the entities' independent functions, employment documents, financial distributions, and financial and administrative history to conclude that there is no genuine issue of material fact regarding the distinctness of the entities. Thus far, the documents in the record are not sufficient to show whether

or not the entities operate as a single business enterprise (as no detailed financial records have been supplied). The evidence submitted does however convince the Court that there is a dispute of material fact regarding this issue. The current evidence reveals that the employees of GSFOSI take orders from TODDI, as Mr. McKenzie's deposition shows that GSFOSI administrative decisions are made by individuals who receive W-2s from TODDI. Rec. Doc. 9-12, Exh. F, p. 10-13. The deposition also reveals that TODDI's immigration department submits Visa applications and gathers overseas documents for GSFOSI employees traveling out of the country. *Id*. at 9. Documents in the record also show that TODDI paid Foster's claim compensation after the accident, which indicates the potential entanglement of the two entities' funds. Rec. Doc. 11-17; Rec. Doc. 11-18. Also, the submitted employee documents contain the Transocean logo and ambiguously refer to the employer as "the Company" in the text. Rec. Doc. 11-10; Rec. Doc. 11-11; Rec. Doc. 11-12. Lastly, documents show that GSFOSI's corporate address was 4 Greenway Plaza, Houston, Texas, and all the individuals working in that office were actually employed by TODDI. Rec. Doc. 9-12, Exh. F, p. 3, 11; Rec. Doc. 11-5, p. 1; Rec. Doc. 11-8; Rec. Doc. 11-16. On the other hand, the current evidence does not reveal stock ownership, common directors or officers, whether TODDI actually funds GSFOSI employee salaries, or whether TODDI caused the incorporation of GSFOSI.

Because further discovery may produce sufficient evidence to conclude that GSFOSI is an alter ego of TODDI's, summary judgment is inappropriate at this stage. The Court therefore declines to address Defendants' argument that TODDI is not Foster's employer. Rec. Doc. 9-3, p. 3. Further, because summary judgment is not warranted for Foster's claims against TODDI on Foster's single business enterprise theory, the Court declines to discuss Foster's alternative argument regarding borrowed employment. Rec. Doc. 11, p. 12.

Lastly, venue is appropriate because TODDI is an appropriate defendant in this case, and because the Defendants do not contest the fact that TODDI's presence in litigation warrants venue in this Court. Rec. Doc. 9-3, p. 9; Rec. Doc. 11, p. 21 Defendants' motion to transfer for lack of appropriate venue is therefore denied.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss and alternative motions are DENIED. Rec. Doc. 9.

New Orleans, Louisiana, this 6th day of August, 2013.

                                                              _____
                                                              HELEN G. BERRIGAN
                                                              UNITED STATES DISTRICT JUDGE